# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

BENJAMIN B. BONNELL,

    Plaintiff,

v.                        Civil Action No. 3:19-cv-8

COL. ROBERT R. BEACH, et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANT WHITEHEAD'S MOTION TO DISMISS (ECF No. 5) (the "Motion"). For the reasons set forth below, the Motion will be denied.

## BACKGROUND

This case arises out of an altercation in a dormitory at Longwood University ("Longwood") between Benjamin Bonnell ("Bonnell") and Ieuan Phillips ("Phillips"). Following this altercation and subsequent investigation by Officer Rachel Whitehead ("Whitehead") of the Longwood Police Department, Bonnell was charged with felony malicious wounding pursuant to Va. Code § 18.2-51 (the "state charge"). The state charge was ultimately terminated favorably for Bonnell by nolle prosequi. Subsequently, Bonnell filed this action, alleging, inter alia, malicious prosecution (by way of 42 U.S.C. § 1983) by Whitehead.[1] A

---

[1]    Bonnell also asserts a claim for defamation per se against Col. Robert Beach ("Beach"), the Director of Public Safety and Chief of Police at Longwood. See Compl. ¶¶ 74-79 (ECF No. 1). The allegations against Beach are not before the Court in this Motion, and will not be addressed further.

"malicious prosecution" claim brought pursuant to Section 1983 "is properly 'founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution.'" Massey v. Ojaniit, 759 F.3d 343, 356 (4th Cir. 2014) (quoting Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000)); Hupp v. Cook, __ F.3d __, 2019 WL 3330443, *9-10 (4th Cir. July 25, 2019); Smith v. Munday, 848 F.3d 248, 252-53 (4th Cir. 2017) (same); see also Manuel v. City of Joliet, Ill., 137 S.Ct. 911, 918-20 (2017).

The background relevant to the Motion will be set out in more detail below. The Motion is brought under Fed. R. Civ. P. 12(b)(6). Hence, the Court is obligated to treat the well-pleaded facts as true and accord Bonnell, the non-moving party, the benefit of all reasonable inferences. See, e.g., Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018).

## A. The Altercation

As alleged in the Complaint (ECF No. 1), Bonnell, while a student at Longwood, was a suitemate with Phillips, another Longwood student. Compl. ¶¶ 11-12. Throughout the day on February 2, 2018 (hereinafter, "February 2"), Bonnell and Phillips had feuded with each other, culminating in what the Complaint describes as a "heated argument." Id. ¶ 13-14. Bonnell alleges that he left Phillips' presence to avoid a physical altercation between the two. Id. ¶ 15. Another Longwood student, Carie Sutliff ("Sutliff"),

directed Bonnell to go to her suite to "cool off from his verbal altercation with Mr. Phillips." Id. ¶ 16.

Bonnell then alleges that, as he was walking with Sutliff to her suite, Phillips "pursue[d] [him] and shouted several vulgar statements" at Bonnell. Id. ¶ 17. Sutliff denied Phillips entry to her suite, but the "physically taller and heavier" Phillips "forcibly pushed Ms. Sutliff out of the way, entered her suite without permission, and confronted Mr. Bonnell." Id. ¶¶ 18-19. Phillips then asked Bonnell if he wanted to fight, aggressively approached Bonnell, initiated physical contact with Bonnell by "grabbing him around the neck," shoved him into the closet door, causing a laceration on Bonnell's head. Id. ¶¶ 20-21. Bonnell slumped to the floor and Phillips picked him up and "slammed him onto the ground." Id. ¶ 22.

Then, the Complaint alleges that, while Bonnell was "on his back on the ground and being attacked by Mr. Phillips," Bonnell "picked up a glass bottle to defend himself against Mr. Phillips." Id. ¶ 23. Bonnell pleads that, in self-defense, he threw the bottle at Phillips, but Phillips ducked, and the bottle struck Sutliff in the side of the head. Id. ¶ 25. The altercation then diffused, and Bonnell checked on Sutliff several times, while Philips "showed no overall concern" for Sutliff. Id. ¶ 26-28. As a result of the altercation, Bonnell had lacerations on his head and a minor concussion. Id. ¶ 30. Sutliff did not seek medical treatment

because her mother, who works in the medical field, advisd her that she did not need treatment. Id. ¶ 32.

## B. The Investigation[2]

On the day after the altercation, February 3, 2018, Bonnell sought out RA Carpenter to discuss what had happened. Id. ¶ 33. Carpenter and Bonnell met on February 5, 2018 and discussed the altercation with Phillips. Id. ¶ 34. Carpenter then spoke with

---

[2]    The Complaint (ECF No. 1) references and quotes from a written report by Resident Assistant ("RA") Michael Carpenter ("Carpenter"), written witness statements given to Whitehead, and Whitehead's incident report. See Compl. ¶¶ 35-42. The Complaint alleges that Whitehead included "false facts" in her incident report that were contrary to the statements given by witnesses, and which led to Bonnell's arrest. Id. ¶ 42. Attached to the Complaint (ECF No. 1) was the Warrant of Arrest issued for Bonnell. See ECF No. 1-1. And, attached to DEFENDANT WHITEHEAD'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (ECF No. 6) was the Criminal Complaint prepared and filed by Whitehead. See ECF No. 6-1. The parties did not provide Carpenter's or Whitehead's reports or the witness statements, although portions of them were incorporated into the Complaint.

Because the Complaint quoted from these witness statements and these reports, and because the Complaint accuses Whitehead of providing false information to obtain an arrest warrant for Bonnell, the Court ORDERED Bonnell to file these documents before the hearing on the Motion. See ECF No. 34. Bonnell filed those documents, see ECF No. 35, and it is appropriate to consider them in considering the Motion. See Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165-66 (4th Cir. 2016) (on Motion to Dismiss, it is appropriate to consider "documents that are explicitly incorporated into the complaint by reference" and documents "attached to the complaint as exhibits" or those "submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity"); see also Gasner v. Cty. of Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995) (collecting authority).

4

Phillips, Sutliff, and another witness, Madison Lantz ("Lantz"), about the events of February 2. Thereafter, and in reliance on those interviews, Carpenter prepared a written incident report. Id. ¶¶ 35-36.

Whitehead performed her own investigation of the February 2 altercation, including receiving written witness statements and Carpenter's written report.[3] Id. ¶¶ 37-42. Whitehead also wrote an incident report, which Bonnell alleges contained "numerous 'false facts.'" Id. ¶ 42. The pertinent details of these reports and witness statements are set out below.

### (1) Carpenter's Report

In his report (dated February 5, 2018), Carpenter documented that Bonnell had told Carpenter: that Bonnell and Phillips "had gotten into a heated discussion"; that Bonnell had made a comment

---

[3]    When Whitehead received the written witness statements appears to be in some dispute. Whitehead added an addendum to her incident report on February 11, 2018 stating that she had received written statements from witnesses, but does not say when she received them. See ECF No. 35-5 at 4. The witness statements themselves have a date of February 6, 2018 at various times (the times do not indicate A.M. or P.M.). However, the Complaint alleges that Whitehead's incident report contains statements that are "[c]ontrary to the written statements provided by RA Carpenter, Ms. Sutliff, Mr. Phillips, and Mr. Bonnell," suggesting that the written witness statements were in Whitehead's possession before she wrote her incident report. Compl. ¶¶ 37-42. Given these discrepancies, at the Motion to Dismiss stage, the Court construes the facts in the light most favorably to Bonnell, and takes as true that Whitehead had RA Carpenter's statement and the written witness statements in her possession when she wrote her incident report.

under his breath to Sutliff that prompted Phillips to ask "in a heated manner 'what did you say'"; that Phillips had "picked up [Bonnell] and slammed [his] head on the door"; that Phillips "slammed [Bonnell] on the ground"; and that "Bonnell then attempted to use a glass bottle to defend against [Phillips]," but that the bottle slipped from Bonnell's hands and hit Sutliff. ECF No. 35-1 at 2.

Then, Carpenter documented his conversation with Phillips, who recounted: that Bonnell had said something to Phillips in the hallway; that Phillips followed Bonnell into a suite; that Bonnell then "challenged" Phillips by asking "do you want to start this?"; that Bonnell "squared up to" Phillips; that Phillips "put [his] hands on the neck of [Bonnell]"; that Bonnell also put his hands on Phillip's neck; that Phillips "then picked up [Bonnell] and 'threw him on the ground'"; and that "[Bonnell] then grabbed a bottle and attempted to throw it at [Phillips] but [Phillips] ducked and [Sutliff] was hit." ECF No. 35-1 at 2.

Finally, Carpenter recounted his conversation with Sutliff and Lantz, who witnessed the altercation. According to Carpenter's report, Sutliff and Lantz recounted: that there had been an "exchange of words" between Phillips and Bonnell; that Sutliff told Bonnell to "cool down" in her room; that, while walking to Sutliff's room, Bonnell muttered "I wish I could throw this bottle at you"; that Phillips reacted to this statement and followed

6

Bonnell to Sutliff's suite; that Phillips forced his way into Sutliff's suite; that Phillips approached Bonnell in the suite, asked him what he had said, and "picked up [Bonnell] and slammed [Bonnell] against the door"; that Phillips then "slammed [Bonnell's] body and head on the floor"; that, while Bonnell was "laying on the floor motionless," Phillips picked him up again and "tried to grab for his neck"; and that "Bonnell then picked up a glass bottle to try to hit [Phillips] with to escape," but that the bottle "slipped" and "hit [Sutliff] instead." ECF No. 35-1 at 3.

Carpenter's report was available to Whitehead when she made her incident report. And, so too were the witness statements made by Bonnell, Phillips, and Sutliff. See supra n.3.

### (2) Bonnell's Written Statement

During her investigation of the February 2 altercation, Whitehead received a written statement from Bonnell, dated February 6. See ECF No. 35-2. Bonnell wrote that he and Phillips had started arguing on that day; that Bonnell left their room and Phillips began yelling after him; that Phillips came to the suite where Bonnell was; that Phillips "began pushing himself into me and [he] picked me up by the neck, slammed me into the closet and my head hit the metal clothing bar"; that Phillips "picked me up again by the legs and slammed me into the ground"; and that "while

7

I was trying to get up I picked up a glass bottle to defend myself,"
but the bottle slipped out of his hand and hit Sutliff. Id.

### (3) Phillips' Written Statement

Phillips also provided a written statement, dated February 6,
2018, to Whitehead as part of her investigation into the February
2 altercation. See ECF No. 35-4. Phillips wrote that Bonnell said
something in the hallway; that Phillips followed Bonnell to
Sutliff's suite to determine what had been said; that, upon
entering Sutliff's suite, Phillips repeatedly asked Bonnell what
he had said; that Bonnell "came at me and squared up and repeatedly
asked me if I wanted to fight and if I wanted to fight right now";
that, after Bonnell repeated his comments again, Phillips pushed
Bonnell "into the locker around the neck still holding him there";
that Bonnell then put his hands around Phillips' neck; that
Phillips then "threw [Bonnell] to the ground; and that "when he
was on the ground [Bonnell] picked up the bottle next to him and
attempted to throw it at [Phillips]," but he ducked and the bottle
hit Sutliff in the head. Id.  Phillips added that he later found
out that Bonnell "told the people in the suit [sic] that if he was
to find an empty bottle he would smash it against my head." Id. It
is not clear from Phillips' statement when Bonnell supposedly said
this.

### (4)  Sutliff's Written Statement

Sutliff gave a written statement, dated February 6, 2018, to Whitehead during Whitehead's investigation. See ECF No. 35-3.  In her statement, Sutliff wrote that Phillips and Bonnell had been "bickering to each other"; that Bonnell told her (as they were walking to Sutliff's room) "sometimes I wish I could throw a bottle at [Phillips'] head"; that Sutliff told Bonnell to go to her suite to cool off; that Phillips stormed down the hallway looking for Bonnell; that Sutliff tried to stop Phillips from entering her room, but Phillips "pushed me out of the way to get to [Bonnell]"; that a fight broke out between Phillips and Bonnell; that Phillips "slammed [Bonnell] and as he was getting up, in the fight, [Bonnell] took the bottle. . .and threw the bottle to hit [Phillips] but it came across the room to hit me instead when [Phillips] ducked to miss it"; and that Sutliff started bleeding from a split in her head. Id.

### (5)  Whitehead's Report

With all this evidence in hand, Whitehead prepared an incident report, dated February 6, 2018. ECF No. 35-5. The incident report first recounts Whitehead's conversation with Sutliff, who, according to Whitehead, stated:  that Phillips and Bonnell had been having "personal issues since school started"; that Phillips entered Sutliff's suite to speak with Bonnell; that, after arguing, Bonnell and Phillips had a physical altercation; that Phillips

9

"shoved Bonnell off of him and Bonnell continued to get in Phillips face"; that Phillips "slammed Bonnell down on the floor cutting his head open"; that, as Phillips "tried to leave the room, Bonnell picked up an alcohol bottle and threw it missing Phillips, and striking [Sutliff] in the back of the head"; and that Sutliff "had a pretty large gash in her head." Id. at 3. The Complaint alleges that this account does not accurately reflect what Sutliff had said. And, a comparison of the incident report and Sutliff's statement supports that allegation.

Whitehead also spoke with Phillips, who, according to Whitehead's report, told her that he and Bonnell had not been getting along. Id. On February 2, Phillips recounted: that he "heard Bonnell talking about him in the hallway and went out to see what he said"; that he followed Bonnell to Sutliff's suite "to confront him"; that, immediately upon entering the room, Bonnell "jumped in his face hitting him with his chest saying he would fight him"; that Bonnell took a swing at Phillips so Phillips "picked him up and basically slammed him down on the floor causing him to hit his head"; that Phillips tried to leave the suite "when Bonnell threw the bottle hitting [Sutliff] in the head"; and that he was later told that Bonnell had stated that he "want[ed] to bash a glass bottle over his head." Id.

The Complaint alleges that the incident report does not accurately reflect what Phillips had said. And, a comparison of

10

the incident report and Phillips' statement supports that allegation.

Finally, according to the incident report, Bonnell recounted the events of February 2 to Whitehead as follows: that Bonnell was in Sutliff's room when Phillips "came in unprovoked and jumped in his face"; that Bonnell "tried to back up and Phillips body slammed him twice hitting his head on the closet"; and that Bonnell "got up, grabbed the bottle and attempted to throw it at Phillips but hit [Sutliff] instead." Id. The Complaint alleges the same. Bonnell also stated that he did not recall making any statements about hitting Phillips in the head with a bottle.[4] Id.

## C. The State Charge

Following Whitehead's investigation into the February 2 altercation, the Complaint alleges that Whitehead took "false facts" to Assistant Commonwealth Attorney Wendy Hannah "to obtain approval to swear out a criminal felony malicious wounding complaint against Mr. Bonnell."[5] Id. ¶¶ 42, 44. The Complaint

---

[4] The Complaint alleges that Whitehead's recounting of the incident contains "false facts." Compl. ¶ 42. Bonnell alleges that Whitehead falsely states (or mischaracterizes the witness statements) to make it appear that Bonnell was the aggressor, not Phillips and that Phillips was trying to leave the room when Bonnell threw the bottle. See id.

[5] The malicious wounding statute at issue, Va. Code § 18.2-51, reads: "If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be guilty of a Class 3 felony. If such act be

11

also alleges that Whitehead's incident report contained key discrepancies from the written statements given by witnesses. Id. ¶ 42. These discrepancies include that Whitehead wrote that Sutliff said Phillips was trying to leave the room when the bottle was thrown, when Sutliff's own written statement does not include this detail. Id.

The Complaint further alleges that Whitehead presented "false facts" to Magistrate John Ellis, and that, on the basis thereof, an arrest warrant was issued for Bonnell for the felony malicious wounding of Sutliff. Id. ¶¶ 49-52. The "false facts" alleged to have been presented to Magistrate Ellis come from both Whitehead's incident report, id. ¶ 42, and from the Criminal Complaint that Whitehead prepared and filed. Id. ¶¶ 42, 47-49. The Criminal Complaint stated in full:

> Accused was involved in a physical altercation with a suite-mate. During the altercation, accused was thrown to the ground and upon standing he grabbed a glass liquor bottle. He threw this bottle at the subject he was fighting but missed him, striking a nearby female in the head causing her to black out. Female has a large hole in the back side of her skull. Minutes before the altercation started, the accused told the female that was hit that he 'wished he could throw a bottle [at] his head' referring to the subject he was involved in the altercation with.

---

done unlawfully but not maliciously, with the intent aforesaid, the offender shall be guilty of a Class 6 felony." Bonnell was charged with a Class 3 felony. See ECF No. 6-1.

ECF No. 6-1 at 4.

Bonnell alleges that the Criminal Complaint falsely states "in part" that: "Mr. Bonnell 'upon standing. . .grabbed a glass liquor bottle'"; "Mr. Bonnell 'caus[ed Ms. Sutliff] to black out'"; and "Ms. Sutliff 'has a large hole in the back side of her skull.'" Compl. ¶ 48 (emphasis and alteration in original). The Complaint also alleges that Whitehead knowingly omitted pertinent facts from the Criminal Complaint, including that Bonnell was on the ground defending himself against Phillips when Bonnell picked up and threw the bottle. See, e.g., id. ¶¶ 2, 67.

Relying on Whitehead's allegedly false and materially incomplete Criminal Complaint, Magistrate Ellis issued an arrest warrant for felony malicious wounding for Bonnell on February 9, 2018. ECF No. 6-1 at 2; Compl. ¶ 50. On February 10, 2018 (eight days after the altercation), Bonnell was arrested on the felony malicious wounding charge, after which Bonnell spent "six (6), very difficult and confusing days in jail, compromising his health. . . ." Id. ¶¶ 52-53. On April 9, 2018, the charges against Bonnell were terminated by the Commonwealth by nolle prosequi. Id. ¶ 57.

D. Procedural Background To The Motion

Thereafter, Bonnell filed this action against Beach and Whitehead. Whitehead filed the Motion (ECF No. 5), and the parties fully briefed it. See ECF Nos. 6, 13, 18. The Court heard oral

13

argument on the Motion on July 10, 2019, and the matter is now ripe for decision.

## THE STANDARD GOVERNING FED. R. CIV. P. 12(b)(6)

Whitehead brings the Motion pursuant to Fed. R. Civ. P. 12(b)(6), asserting qualified immunity. Motions to dismiss based upon Fed. R. Civ. P. 12(b)(6) are evaluated under the following standards:

> In [considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss], we must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party. To survive a 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" A claim is "plausible on its face," if a plaintiff can demonstrate more than "a sheer possibility that a defendant has acted unlawfully."

Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court "may consider documents attached to the complaint or the motion to dismiss so long as they are integral to the complaint and authentic." Rockville Cars, 891 F.3d at 145 (citation omitted). And, as discussed above, supra n.2, the Court may consider "documents that are explicitly incorporated into the complaint by reference." Goines, 822 F.3d at 166. Notwithstanding those basic principles, however, the Court does not "accept as true a legal

14

conclusion couched as a factual allegation." SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 422 (4th Cir. 2015) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

The inquiry under Fed. R. Civ. P. 12(b)(6) does not change where a claim of qualified immunity is asserted. See Turner v. Thomas, ___ F.3d ___, 2019 WL 3242702, *1-2 (4th Cir. July 19, 2019); Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014). In other words, to survive the Motion, Bonnell must state a "plausible claim for relief." Massey, 759 F.3d at 353 (quoting Iqbal, 556 U.S. at 679). When a qualified immunity defense is asserted at the Fed. R. Civ. P. 12(b)(6) stage, "the defense faces a formidable hurdle and is usually not successful" because all the plaintiff has to do is state a plausible claim. See Owens v. Baltimore City States' Attorneys Office, 767 F.3d 379, 396 (4th Cir. 2014) (internal quotations omitted); see also Raub v. Bowen, 960 F. Supp. 2d 602, 613-14 (E.D. Va. 2013) (recognizing that summary judgment is the typical "vehicle to resolve qualified immunity"); Quigley v. City of Huntington, W.V., 2017 WL 4998647, *6 (S.D.W.V. Nov. 2, 2017) (denying Rule 12(b)(6) motion based on qualified immunity where facts alleged plausibly established arrest without probable cause).

## DISCUSSION

Whitehead's sole argument in the Motion is that Bonnell has failed to state a claim against her for malicious prosecution because the allegations in the Complaint (ECF No. 1) cannot overcome qualified immunity. Whitehead argues that she is entitled to qualified immunity because Bonnell's arrest was supported by probable cause. Bonnell disagrees, arguing that he has adequately pled that he was acting in self-defense, and that Whitehead made false statements in, and knowingly omitted facts from, the incident report and Criminal Complaint that showed he was acting in self-defense, thereby causing his arrest without probable cause. As set forth below, the Motion will be denied because Bonnell's allegations do state a plausible claim for relief.

### A. Qualified Immunity Framework

Because Whitehead has asserted qualified immunity, the Court must inquire whether Bonnell has "plead[ed] factual matter that, if taken as true, states a claim that [Whitehead] deprived him of his clearly established constitutional rights." Massey, 759 F.3d at 353 (citation omitted) (first alteration in original). The qualified immunity analysis requires two steps. First, Bonnell must allege facts that make out a violation of a constitutional right. See id. at 353-54. And, second, the constitutional right at issue must have been clearly established at the time of the

16

alleged violation of that right. See id. (citing Pearson v. Callahan, 555 U.S. 223, 232 (2009)) (setting out the two-step analysis).

To be "clearly established," the "contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Hill v. Crum, 727 F.3d 312, 321-22 (4th Cir. 2013) (citations omitted). In performing the "clearly established" assessment, the Court first looks to Supreme Court of the United States or Fourth Circuit authority, but if no such controlling authority exists, the Court may look "to a consensus of cases of persuasive authority from other jurisdictions, if such exists." Feminist Majority Found. v. Hurley, 911 F.3d 674, 704 (4th Cir. 2018) (citation omitted) (emphasis in original).

With this framework in mind, it is appropriate to turn to the two-part qualified immunity analysis.

## B. Bonnell Has Adequately Pled A Violation Of His Constitutional Rights

Bonnell alleges a claim for "malicious prosecution" against Whitehead. He alleges, inter alia, that: he "has a right against unreasonable seizures under the Fourth Amendment," Compl. ¶ 61; he was "clearly and unequivocally acting in self-defense when he threw the bottle at" Phillips, id. ¶ 65; "Whitehead provided false facts to ACA Hannah and Magistrate Ellis to obtain the criminal complaint

17

against" Bonnell, id. ¶ 66; "Whitehead purposely concealed important and material facts regarding the incident, including, but not limited to, Mr. Bonnell's actions in self-defense," id. ¶ 67; Whitehead "acted recklessly, with actual malice, and with a conscious disregard to the rights of Mr. Bonnell in pursuing the criminal charge against" him, id. ¶ 68; and Whitehead's "intentional and reckless actions" caused Bonnell to be seized "pursuant to legal process that was not supported by probable cause." Id. ¶ 72.

In essence, Bonnell makes two arguments: (1) that he was clearly acting in self-defense in the altercation with Phillips, and self-defense conclusively defeats probable cause; and (2) that Whitehead provided false statements to, and omitted material facts from, the prosecutor and the magistrate to obtain Bonnell's arrest.[6] See generally ECF No. 13. Whitehead argues that the facts in the Complaint establish probable cause for Bonnell's arrest for malicious wounding. See generally ECF No. 6. Because there was probable cause for his arrest, she argues, there was no constitutional violation.

---

[6] While Bonnell's briefing focuses in large part on the first argument because Whitehead's briefing focuses on that point, it is clear from reading the Complaint(ECF No. 1, ¶¶ 47-50) and PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT WHITEHEAD'S MOTION TO DISMISS (ECF No. 13 at 4-6, 11-14) that he also alleges that Whitehead presented a false and misleading characterization of the events to the prosecutor and magistrate in order to obtain Bonnell's arrest.

As explained below, Bonnell has stated a plausible claim that his constitutional rights were violated. To reach this conclusion, it is first necessary to define the constitutional right at issue. Then, it is necessary to determine if the Complaint states a claim for a violation of that right.

### (1) Contours Of Malicious Prosecution Claim

A malicious prosecution claim is properly understood as a claim for an unreasonable seizure (one not supported by probable cause) under the Fourth Amendment to the United States Constitution. See, e.g., Hupp, 2019 WL 3330443 at *9-10; Munday, 848 F.3d at 252-53; Massey, 759 F.3d at 356; Miller v. Prince George's Cty., 475 F.3d 621, 627 (4th Cir. 2007) ("Unquestionably, [t]he Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual without probable cause is unreasonable.") (citation omitted) (alteration in original); see also Manuel, 137 S.Ct at 918-20 (holding that the Fourth Amendment governs an action alleging unlawful pretrial detention).

To plead a viable "malicious prosecution" claim, the Complaint must allege "that [1] the defendant ha[s] seized plaintiff pursuant to legal process that was not supported by probable cause and [2] that the criminal proceedings have terminated in plaintiff's favor." Munday, 848 F.3d at 253 (quoting Massey, 759 F.3d at 356); see also Evans v. Chalmers, 703

F.3d 636, 647 (4th Cir. 2012) (requiring the police officer to have "caused" the seizure). The parties agree here that the state charge against Bonnell was dismissed by nolle prosequi, meaning that the proceedings terminated favorably for Bonnell. See Compl. ¶ 4; ECF No. 6 at 6 ("Whitehead does not contest that the criminal case ultimately terminated in Bonnell's favor. . . ."). Accordingly, the only issue is whether Whitehead had probable cause to cause Bonnell's arrest.

Where a police officer obtains a warrant from a neutral magistrate, that warrant will typically shield the officer from liability for a malicious prosecution because the magistrate's actions break the chain of causation. See Evans, 703 F.3d at 647 ("[S]ubsequent acts of independent decision-makers. . .may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure."); Massey, 759 F.3d at 357. Notwithstanding this general rule, however, "officers may be liable [for malicious prosecution] when they have lied to or misled the prosecutor. . .failed to disclose exculpatory evidence to the prosecutor. . .or unduly pressured the prosecutor to seek the indictment." Evans, 703 F.3d at 647-48 (citations omitted); Hupp, 2019 WL 3330443 at *10 ("An officer who lies to secure a probable-cause determination can hardly be called reasonable.").

If an arrestee alleges that a police officer's false statements or omissions led to his arrest in the absence of probable cause (at issue here), the Court must analyze whether the "false statements or omissions [were] 'material,' that is, 'necessary to the finding of probable cause.'" Massey, 759 F.3d at 357 (quoting Miller, 475 F.3d at 628); see also Franks v. Delaware, 438 U.S. 154, 171 (1978). The officer's false statements or omissions must also have been made intentionally or with "reckless disregard for the truth." Massey, 759 F.3d at 357. "Reckless disregard" is shown by

> evidence that an officer acted "with a high degree of awareness of [a statement's] probable falsity," that is, "when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.

Miller, 475 F.3d at 627; Massey, 759 F.3d at 357. For omissions, "reckless disregard" can be shown "by evidence that a police officer failed to inform the judicial officer of facts [he or she] knew would negate probable cause." Miller, 475 F.3d at 627 (citation omitted) (alteration in original).

"Materiality" is determined by excising the allegedly false statements from the probable cause affidavit, and then determining if the corrected affidavit would support the probable cause determination. See Massey, 759 F.3d at 357. Where an "omission" is also at issue, the Court also must "insert the facts recklessly

21

omitted, and then determine whether or not the corrected warrant affidavit would establish probable cause." Miller, 475 F.3d at 628.

Finally, whether probable cause exists requires an examination of the totality of the circumstances that the officer knew at the time of the arrest. See Gilliam v. Sealey, __ F.3d __, 2019 WL 3419173, *11 (4th Cir. July 30, 2019); Hupp, 2019 WL 3330443 at *4-7; Munday, 848 F.3d at 252-53 (applying totality standard to determine probable cause in malicious prosecution case); Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002). There "need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required." Brown, 278 F.3d at 367-68 (citations omitted). The probable cause analysis in a given case requires the consideration of "'the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.'" Id. at 368 (quoting Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992)); Hupp, 2019 WL 3330443 at *4-7 (interpreting West Virginia statute to determine if officer had probable cause).

### (2) Analysis

To decide the Motion, the only issue is whether Bonnell has pled factual allegations that Whitehead caused Bonnell to be seized in the absence of probable cause. Bonnell has adequately pled

22

that Whitehead provided materially false statements or omissions, either intentionally or with reckless disregard for the truth, to the prosecutor and magistrate to secure Bonnell's arrest in the absence of probable cause. See, e.g., Massey, 759 F.3d at 357. That claim adequately states a violation of clearly established law.

As a threshold matter, the probable cause analysis in this case requires an examination of "the contours of the offense thought to be committed by" Bonnell's conduct. See Brown, 278 F.3d at 368; Hupp, 2019 WL 3330443 at *4-7. The malicious wounding statute at issue, Va. Code § 18.2-51, reads:

> "If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be guilty of a Class 3 felony. If such act be done unlawfully but not maliciously, with the intent aforesaid, the offender shall be guilty of a Class 6 felony."

(emphasis added).[7] Malicious intent to wound "may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury." Burkeen v. Commonwealth, 749 S.E.2d 172, 174 (Va. 2013) (citation omitted). Further, a malicious

---

[7] Virginia courts have applied the doctrine of "transferred intent" to Va. Code § 18.2-51, meaning that if Bonnell had the requisite intent to maliciously wound Phillips, he is not absolved by the fact that he hit Sutliff instead. See Blow v. Commonwealth, 665 S.E.2d 254 (Va. App. 2008); Moore v. Commonwealth, 2012 WL 2551176, *3 (Va. App. 2012) (unpublished).

wounding requires that "a person must. . .intend to permanently, not merely temporarily, harm another person." Id. (citation omitted). "Malice" requires the "doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." Id. The text of the statute teaches that it is a specific intent statute, requiring both the required action and mental state.

Bonnell spends much of his briefing arguing that there could not have been probable cause to arrest him under the malicious wounding statute because he so clearly acted in self-defense against Phillips. ECF No. 13 at 1-2, 8-14.[8] While he continuously incants "self-defense," he also clearly argues that "Whitehead

---

[8]    Bonnell cites a number of cases for the proposition that "self-defense defeats the defense of probable cause as a matter of law." ECF No. 13 at 8. See Garrick v. Kelly, 649 F. Supp. 607, 612 (E.D. Va. 1986), aff'd, 842 F.2d 1290 (4th Cir. 1988); Foy v. Giant Food Inc., 298 F.3d 284, 289-90 (4th Cir. 2002). Neither Garrick nor Kelly involved malicious prosecution claims under the federal constitution (nor were they Section 1983 actions against law enforcement). Those cases do not support Bonnell's broad rule about self-defense in this case.

Bonnell also cites several non-Fourth Circuit cases for the proposition, stated above, about self-defense. See, e.g., Yousefian v. City of Glendale, 779 F.3d 1010, 1014-15 (9th Cir. 2015); Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2nd Cir. 1997). These cases stand for the proposition that police officers performing arrests on-scene may not ignore exculpatory evidence of which they are aware, including claims of self-defense. See id. But, these cases also teach that the arrestee's claim of self-defense does not negate probable cause where other evidence supports a finding of probable cause by the officer on-scene. See id.

instituted criminal proceedings against [him], wholly without probable cause, upon false, incomplete, and misdirected information provided to the Assistant Commonwealth Attorney and Magistrate." Id. at 1.    Fairly reading the Complaint, what Bonnell is really asserting is that Whitehead provided false information (and omitted material information) to the prosecutor and the magistrate to obtain his arrest without probable cause. That is the claim to which the Court now turns.

An arrest warrant for Bonnell was issued by Magistrate John Ellis on the basis of the Criminal Complaint sworn out by Whitehead, in which she wrote, in full:

> [Bonnell] was involved in a physical altercation with a suite-mate [Phillips]. During the altercation, [Bonnell] was thrown to the ground and upon standing he grabbed a glass liquor bottle. He threw this bottle at the subject he was fighting but missed him, striking a nearby female in the head causing her to black out. Female has a large hole in the back side of her skull. Minutes before the altercation started, [Bonnell] told the female that was hit that he 'wished he could throw a bottle [at] his head' referring to the subject he was involved in the altercation with.

ECF No. 6-1 at 4.    The Complaint alleges that the Criminal Complaint "falsely states" that Bonnell threw the bottle "upon standing"; that Sutliff "black[ed] out" from being struck by the bottle; and that Sutliff had "a large hole in the back side of her skull." Compl. ¶ 48.    The Complaint also alleges that Whitehead presented other "false facts" from her incident report to the

25

magistrate: that Sutliff told Whitehead that Bonnell "continued to get in Phillips face"; that Sutliff told Whitehead that Phillips was trying to leave the room when Bonnell threw the bottle at him; that Phillips told Whitehead that Bonnell immediately got in Phillips' face and began hitting Phillips as soon as Phillips entered the room; and that Phillips told Whitehead that Phillips was attempting to leave the room when Bonnell threw the bottle hitting Sutliff. Compl. ¶¶ 42, 49. It is alleged that these statements in Whitehead's incident report (and attributed to various witnesses) are "[c]ontrary to the written statements" provided by Carpenter and the witnesses to the events of February 2. Compl. ¶ 42. And, as noted above, neither the incident report nor the Criminal Complaint is faithful to what the witnesses actually said to Whitehead or to RA Carpenter.

It is necessary to determine whether these allegedly "false" statements by Whitehead were "material" (i.e. necessary) to the finding of probable cause and whether she made them intentionally or with reckless disregard for the truth. See Massey, 759 F.3d at 357. It is also necessary to determine if Whitehead omitted material facts intentionally or with reckless disregard for the truth to mislead the prosecutor and the magistrate. See Miller, 475 F.3d at 627-28. Materiality of statements in the Criminal Complaint is determined by removing the allegedly false statements

26

from the Criminal Complaint.[9] See id. (citing Franks, 438 U.S. at 156). Striking the "false" statements from the Criminal Complaint leads to:

> [Bonnell] was involved in a physical altercation with a suite-mate [Phillips]. During the altercation, [Bonnell] was thrown to the ground and ~~upon standing~~ he grabbed a glass liquor bottle. He threw this bottle at the subject he was fighting but missed him, striking a nearby female in the head ~~causing her to black out~~. Female ~~has a large hole in the back side of her skull~~. Minutes before the altercation started, [Bonnell] told the female that was hit that he 'wished he could throw a bottle [at] his head' referring to the subject he was involved in the altercation with.

ECF No. 6-1 at 4 (strikethrough added); see also Massey, 759 F.3d at 357.

Removing these statements paints a significantly different picture of what occurred on February 2, 2018. First, the way Whitehead described the injury to Sutliff in the Criminal Complaint is significantly worse than it actually was. Indeed, Sutliff did not seek medical care for her injuries. Compl. ¶ 32. None of the witnesses stated that Sutliff blacked out or had a "large hole" in her head. Nor did Whitehead herself make such a statement in the incident report. And, the statement that Bonnell threw the bottle

---

[9]     At oral argument, counsel for Whitehead argued that excising the supposedly false statements from the Criminal Complaint was the proper approach. July 10 Hr'g Tr. at 13-14 (ECF No. 39). But, she argued, even removing these statements, there was still probable cause to arrest Bonnell for malicious wounding. Id.

"upon standing" contradicts the witnesses' written statements to Whitehead, which all show Bonnell being in a defenseless position on the ground (or in the process of trying to get away from Phillips). See Bonnell's statement (ECF No. 35-2); Phillips' statement (ECF No. 35-4); Sutliff's statement (ECF No. 35-3).[10]

The Criminal Complaint is also notable for what it omits. See Miller, 475 F.3d at 627-28. The Criminal Complaint neglects to point out that all the evidence (except Phillips' statement) shows that Phillips was the overall aggressor in the altercation. Nor does it include the information in Carpenter's report (provided by Sutliff) that Bonnell was "laying on the floor motionless," and that Phillips picked him up again and "tried to grab for his neck." ECF No. 35-1. And, both Bonnell and Phillips gave statements to

---

[10]   The veracity of statements in the Criminal Complaint is also called into question by the discrepancies between the witnesses' written statements, see ECF Nos. 35-2, 35-3, 35-4, and Whitehead's incident report. ECF No. 35-5. For example, in her report, Whitehead writes that Sutliff said: "As Phillips tried to leave the room, Bonnell picked up an alcohol bottle and threw it missing Phillips, and striking [Sutliff] in the back of the head." ECF No. 35-5 at 3 (emphasis added). However, in her written statement provided to Whitehead, Sutliff never says that Phillips was trying to leave, but rather describes Phillips as slamming Bonnell to the ground, after which Bonnell picked up the bottle. ECF No. 35-3.

Additionally, Whitehead writes that Phillips said that he "was attempting to leave the girls room when Bonnell threw the bottle." ECF No. 35-5 at 3. However, in his written statement, Phillips describes throwing Bonnell to the ground and then seeing Bonnell, while he was on the ground, attempting to throw the bottle at him. ECF No. 35-4. Phillips never says that he was leaving the room.

that effect to Whitehead, thereby corroborating what they had told Carpenter. Indeed, even Phillips said that he had picked Bonnell up and slammed him down on the floor. Nor does the Criminal Complaint contain any of the information from witnesses that Bonnell was attempting to defend himself when he threw the bottle. See Carpenter's Report, ECF No. 35-1 at 3 (describing Sutliff as saying that Bonnell picked up and threw the bottle in an attempt to "escape" Phillips); Bonnell's statement, ECF No. 35-2 (describing how he picked up a "glass bottle to defend myself"). These omissions were "reckless[] omi[ssions]" because they could undermine the specific intent element of Va. Code § 18.2-51. See Miller, 475 F.3d at 627-28 (officer must inform judicial officer of facts he knows would "negate probable cause"); Brown, 278 F.3d at 368 (contours of the offense at issue are relevant to probable cause). Any reasonable law enforcement officer would know that to be so.

After removing the "false" statements and adding the recklessly omitted evidence, described above, the Court concludes that Bonnell has adequately stated a claim that these statements and omissions were material to the probable cause determination. See Miller, 475 F.3d at 627-28; Massey, 759 F.3d at 357. A modified Criminal Complaint would demonstrate that Bonnell was engaged in a physical altercation with Phillips and that he threw a bottle that struck Sutliff in the head. However, it would also

reflect (as reported by Bonnell and Sutliff) that Phillips was the aggressor in the fight; that Bonnell was on the floor when he threw the bottle; and that he was attempting to defend himself.[11]  Under Va. Code § 18.2-51, there must be a malicious injuring done "with the intent to maim, disfigure, disable, or kill." Va. Code § 18.2-51 (emphasis added); Burkeen, 749 S.E.2d at 174 (malicious wounding requires intent to permanently harm another).  And, by including the erroneous (perhaps false) facts and omitting other material facts, Whitehead gave the ACA Hannah and Magistrate Ellis a set of facts that failed to show that Bonnell was acting in self-defense.

---

[11]   It is true that the Criminal Complaint contains a statement that "[Bonnell] told the female that was hit that he 'wished he could throw a bottle [at] his head' referring to the subject he was involved in the altercation with." ECF No. 6-1 at 4. The Complaint (ECF No. 1) does not include this statement among the "false" aspects of the Criminal Complaint. See Compl. ¶ 48. The Complaint, however, does state that the list of "false" statements is not complete. See id. ("The criminal complaint falsely states, in part. . ."). And, Bonnell told Whitehead that he could "not. . .recall" making this statement. See Whitehead Report (ECF No. 35-5 at 3). The statement was, however, recounted by Sutliff to Carpenter (ECF No. 35-1 at 3) and in Sutliff's written statement (ECF No. 35-3).

However, given the factual discrepancies in what occurred on February 2 (between the witness statements and Whitehead's accounting), and given that the determination of probable cause requires an examination of the totality of the circumstances known by the officer at the time of causing the arrest, see, e.g., Munday, 848 F.3d at 252-53, it is not possible to assess this statement without further factual development.

Taking the "totality-of-the-circumstances" as required for the probable cause analysis, Munday, 848 F.3d at 252-53, and viewing those circumstances in the light most favorably to Bonnell, a reasonable magistrate reviewing the modified Criminal Complaint likely would have concluded that probable cause for malicious wounding was lacking. That is so because the Criminal Complaint would not establish that Bonnell had the specific intent to "maim, disfigure, disable, or kill" Phillips. Further, the factual allegations (again, taking them in the light most favorably to Bonnell) that Bonnell was trying to defend himself, do not evince Bonnell's intent to permanently harm Phillips. Burkeen, 749 S.E.2d at 174. Whitehead's alleged false statements and omissions were thus "material" to the probable cause determination.

And, again construing the facts most favorably to Bonnell, Whitehead acted at least with reckless disregard for the truth, if not intentionally, in making these false statements and omissions. Massey, 759 F.3d at 357; Miller, 475 F.3d at 627-28. "Viewing all the evidence, [Whitehead] must have entertained serious doubts as to the truth of [her] statements or had obvious reasons to doubt the accuracy of the information [she] reported." Miller, 475 F.3d at 627-28. As discussed above, no witness told Whitehead that Sutliff "black[ed] out" or had a large "hole" in her head. Further, Whitehead's incident report attributes to key witnesses statements that are materially at odds with what those witnesses wrote in

31

their own written statements to Whitehead. See supra n.10. The given statements by witnesses to Carpenter show that Bonnell and Phillips had a dorm fight in which Phillips was the aggressor; that, after having been manhandled by Phillips and while laying vulnerable on the floor, Bonnell threw a bottle to defend himself; and that the bottle struck Sutliff, causing minor injury. Certainly, a reasonable jury could so find. On balance, they do not provide a reasonable basis on which to believe that Bonnell had a malicious intent to permanently injure Phillips or Sutliff. See Burkeen, 749 S.E.2d at 174. That Whitehead concluded otherwise on the record currently before the Court establishes "reckless disregard" for the truth.

In sum, the Complaint adequately alleges that Whitehead caused Bonnell to be seized pursuant to a legal process not supported by probable cause and one based on knowing falsity and knowing omission of material facts. Bonnell has alleged a violation of his constitutional right that is "plausible claim on its face," and it is not "apparent on the face of the complaint that the officer is entitled to qualified immunity." Quigley, 2017 WL 4998647, at *6 (denying Rule 12(b)(6) motion where facts alleged plausibly established arrest without probable cause); see also Owens, 767 F.3d at 396. Therefore, it is necessary to turn to the second qualified immunity prong.

## C. Bonnell Has Adequately Alleged The Violation Of A Constitutional Right That Was Clearly Established At The Time Of Whitehead's Action

Bonnell's constitutional right to be free from unreasonable seizure (one unsupported by probable cause) has long been clearly established law. The Fourth Circuit's decision in Miller is instructive on just how long this rule has been clearly-established. See 475 F.3d at 631-32. Miller was a case about whether an officer was entitled to qualified immunity where he was alleged to have made materially false statements in an arrest warrant affidavit. After first determining that Miller had alleged a violation of his constitutional right to be free from unreasonable seizure, see id. at 627-31, the Fourth Circuit held that this constitutional right was clearly established at the time of the alleged violation. See id. at 631-32. As the Fourth Circuit taught in Miller in 2007:

> the Supreme Court has long held that a police officer violates the Fourth Amendment if, in order to obtain a warrant, he deliberately or "with reckless disregard for the truth" makes material false statements or omits material facts. Franks, 438 U.S. at 155, 98 S.Ct. 2674; See also, e.g., Leon, 468 U.S. at 922-23, 104 S.Ct. 3405 & n. 23; Franks, 438 U.S. at 164-65, 98 S.Ct. 2674. We and our sister circuits have frequently applied this mandate. See, e.g., Colkley, 899 F.2d at 301; Burke, 405 F.3d at 81-82; Holmes v. Kucynda, 321 F.3d 1069, 1083 (11th Cir.2003); Olson v. Tyler, 771 F.2d 277, 281 (7th Cir.1985).

475 F.3d at 631; see also Massey, 759 F.3d at 356-57 (2014 case

articulating this rule); Evans, 703 F.3d at 647-48 (2012 case articulating same rule). That, of course, is what Bonnell alleges.

It is clear from Miller, Massey, and Evans that Bonnell had a clearly established constitutional right to be free from an unreasonable seizure (i.e. arrest) obtained in the absence of probable cause. And, these cases also teach that a police officer cannot rely on qualified immunity where the officer lied or mislead the magistrate in order to establish probable cause to obtain an arrest warrant. It is not necessary to determine exactly when the rule was established; it suffices to say that there is no doubt that the rule was clearly established in 2018, when Whitehead acted.

Accordingly, the Complaint satisfies the second prong of qualified immunity.

## CONCLUSION

At this stage in the litigation, Bonnell has adequately pled facts, that, if proven to be true, demonstrate a violation of his clearly established constitutional rights.[12] For the reasons set

---

[12] The Court recognizes that qualified immunity should be decided at the earliest possible stage of the litigation, see, e.g., Gilliam v. Sealey, __ F.3d __, 2019 WL 3419173, *7 (4th Cir. July 30, 2019). However, the Court cannot resolve "the merits of the plaintiff's claims or any disputes of fact" at the Motion to Dismiss stage. See Massey, 759 F.3d at 353. Whether additional discovery changes the calculus on qualified immunity remains to be seen.

forth above, DEFENDANT WHITEHEAD'S MOTION TO DISMISS (ECF No. 5) will be denied.

It is so ORDERED.

_____/s/_____ _R_E_P_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August __6__, 2019